```
                  IN THE UNITED STATES DISTRICT COURT FOR THE
                         WESTERN DISTRICT OF MISSOURI
                              SOUTHERN DIVISION

UNITED STATES OF AMERICA,     ) Case No. 14-03104-01-CR-S-MDH
                              )
         Plaintiff,           ) Springfield, Missouri
                              ) December 15, 2014
v.                            )
                              )
SCOTT GOODWIN-BEY,            )
                              )
         Defendant.           )
_____)
```

**TRANSCRIPT OF ARRAIGNMENT AND SCHEDULING CONFERENCE**
**BEFORE THE HONORABLE DAVID P. RUSH**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | James J. Kelleher, Esq.<br>Assistant United States Attorney<br>901 St. Louis St., Ste. 500<br>Springfield, MO  65806<br>(417) 831-4406 |
| For the Defendant: | Michelle Moulder, Esq.<br>Federal Public Defender's Off.<br>901 St. Louis St., Ste. 801<br>Springfield, MO  65806<br>(417) 873-9022 |
| Court Audio Operator: | Ms. Kerry Schroeppel |
| Transcribed by: | Rapid Transcript<br>Lissa C. Whittaker<br>1001 West 65th Street<br>Kansas City, MO  64113<br>(816) 914-3613 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1    (Court in Session at 9:42 a.m.)

2    THE COURT: Calling in *United States vs. Scott* Goodwin-Bey. The defendant is present along with his attorney, Ms. Michelle Moulder. This matter is set this morning for arraignment and scheduling conference. Ms. Moulder, do you want me to proceed with this arraignment and scheduling conference. I know you -- there might be some other issues you want to bring to the Court's attention.

9    MS. MOULDER: Your Honor, I believe that we could proceed with the arraignment and maybe take up the other issue after the arraignment.

12   THE COURT: On behalf of -- and for the record, the United States is represented by Assistant United States Attorney, Mr. Jim Kelleher. Ms. Moulder, on behalf of the defendant, have you received a copy of the Indictment in this case?

16   MS. MOULDER: We have, Your Honor, and we'd waive formal reading and request a plea of not guilty be entered at this time.

18   THE COURT: A plea of not guilty is entered on behalf of the defendant. On his behalf, will you voluntarily disclose Jencks Act material at least 14 days prior to trial?

21   MS. MOULDER: Yes, Your Honor.

22   THE COURT: And are you asking for all discovery to which your client is entitled?

24   MS. MOULDER: Yes, Your Honor.

25   THE COURT: Mr. Kelleher, on behalf of the United

1 States, will you also voluntarily disclose all Jencks Act
2 material at least 14 days prior to trial?
3      MR. KELLEHER: Yes, Your Honor.
4      THE COURT: And are you asking for all discovery to
5 which the United States is entitled?
6      MR. KELLEHER: Yes, Your Honor.
7      THE COURT: I will enter a scheduling order and place
8 this matter on the joint criminal trial docket. That will
9 conclude this portion of the proceeding in regard to the
10 arraignment and scheduling conference. Is there another issue
11 that you wanted to bring to the Court's attention, Ms. Moulder?
12      MS. MOULDER: Your Honor, prior to court, Mr. Goodwin-
13 Bey expressed his dissatisfaction with counsel, and I would like
14 to give him an opportunity, if he wishes to do that, to ask the
15 Court to appoint new counsel for him.
16      THE COURT: Mr. Goodwin-Bey, is there anything you'd
17 like to bring to the Court's attention? And I want to be
18 careful, I don't want to get into the attorney-client privilege,
19 anything that you might have discussed that would be privileged
20 between your counsel. But is there anything that you'd like to
21 bring to the Court's attention regarding your relationship in
22 terms of working with your appointed counsel.
23      MR. GOODWIN-BEY: Your Honor, this is what I want to say
24 in regards to my detention. The Court has no record of me giving
25 a positive UA, meaning drug use. The Court has no record of a

positive drug use, since I've been dealing with the Court, and that's been a few years now. Although I have been before the Court before, you know, with a similar offense, I was working, Your Honor, at the time of the offense. It's alleged. I have not been proven guilty. So, I was working, and the Court has no record of positive drug abuse. Right? So, all I'm saying, Your Honor, is that I was working, and I don't have a history of using drugs. So, my substance abuse problem has been dealt with. I wasn't an everyday user then. I'm not an everyday user now. And I was working and had submitted a clean UA no more than a week prior to this offense to retain my job. A clean UA, Your Honor. So, I was clean. Okay? And I was working. And all I'm asking the Court is for the ability to continue working while these matters are being -- these alleged offenses are being dealt with. And it's my opinion, Your Honor, since I have been here in the court before, that maybe, you know, I'm being considered, you know, guilty before being proven that way. You know? Your Honor, all I'm saying is that I'm not a flight risk. I don't have a lot of money. You could talk to my job. They would tell you that I've attended every day. I worked every day, Your Honor, and I have not given a dirty UA to the federal government or the state government. And I don't have a history of violent offenses with the court. You know, misdemeanor, maybe 23 years ago. Your Honor, you hear what I'm saying to you, Judge Rush? So, I'm asking for the ability to work, Your Honor. I'm not

1  going to run. I've never run from bond on any case anywhere in
2  the United States. Never. I've never failed to appear. I've
3  never run. I've never flighted. I never did anything but obey
4  the Court's regulation. Now, I'm not saying I'm an angel. I'm
5  not saying that I haven't had certain issues, you know, but I've
6  never run, Your Honor. I will be here. You know, you want to
7  put me on house arrest or whatever, that's fine. And it just
8  occurred to me at the time that I was talking to my attorney that
9  she kind of felt that -- I didn't feel that she was, she felt
10 that I was being sincere, you know. I think she's a good
11 attorney, you know. I'd like to keep her as counsel right now,
12 you know. But she did express to me that the Court was a little
13 bit angry with her for helping me get a early release from
14 supervision, which was only possible because of my good conduct.
15 You know what I mean? So, I don't want -- I don't want -- I like
16 her. You know, I think she's a good attorney. She's helped me
17 in the past, Your Honor, but I feel that the Court can consider
18 my detention and allow me the chance to work while these matters
19 are handled, Your Honor. The Court has no record of me flying
20 from anybody.
21        THE COURT: Well, and you probably are aware of this,
22 Mr. Goodwin-Bey, you know, this Court has nothing to do with
23 whatever happened on your early release from supervision. That
24 would have been another court that addressed that issue with you.
25 I guess what I'm trying to determine, because we are fairly early

1 in this case, and I have no doubt to -- I have no reason to doubt
2 your sincerity about your desire to work and the issues of your
3 not having positive UAs. I don't have your Pretrial Services
4 Report in front of me, but if I remember, you know, you do have
5 an extensive criminal history, and, you know, the Court takes
6 into consideration a number of factors. And in light of what
7 you've told me, I mean, again I'd have to look at the Pretrial
8 Services Report again to just refresh my recollection. What the
9 Court needs to kind of get a sense of is whether the relationship
10 between you and your counsel is at a point where, sort of like a
11 marriage where it's irretrievably broken.

12     MR. GOODWIN-BEY: I don't think so right now, Your
13 Honor. Right now, I just don't want to feel that my attorney's
14 against me. Like she already feels I'm guilty as well. You
15 know, right now, Michelle is good with me. I'm good with her,
16 you know. I'd like to get to discovery and all that, you know,
17 so she can look at it, we can look at it, Your Honor. But my
18 main concern was that I don't want to feel that my attorney, you
19 know, already feels that I'm a lost cause, you know, because I've
20 been explained to by my attorney or an attorney before that her
21 job is only to make sure that my rights are not violated. You
22 know what I mean? And that's a good thing because I don't want
23 my rights violated. But I mean, in the process of that, I don't
24 want to have a relationship with an attorney who already feels
25 that I'm a lost cause.

1       THE COURT: Well, I mean, I'll just tell you from my
2 experience with Ms. Moulder is is that she's a very experienced
3 and well-respected criminal defense attorney --
4       MR. GOODWIN-BEY: That's been my experience as well,
5 Your Honor.
6       THE COURT: -- in federal court. And, you know, I have
7 never found her to prejudge a case. And again, I'm not privy to
8 the interaction that you would have with her. But there's a
9 concern on the Court's part though, is that if that relationship
10 is, if you're so frustrated with her and you believe that you
11 can't communicate with her and that you don't feel like she can
12 effectively represent you, even though I may disagree with that,
13 I would consider allowing her to withdraw and appoint new
14 counsel. But, you know, I'm trying to get a sense from you as to
15 what your level of dissatisfaction is. I'll tell you also, Mr.
16 Goodwin-Bey, you know, you're entitled to an attorney. You're
17 going to get a court-appointed attorney, whether it's the public
18 defenders or one of the CJA panel. And all those attorneys are
19 very, very good. And the CJA panel are attorneys who are paid by
20 the government to represent defendants in federal court. I say
21 paid by the government. They're paid from a separate fund. But
22 you would get a court-appointed attorney. But, you know, I'm not
23 going to go through five or six attorneys until you get an
24 attorney that tells you something that you might want to hear.
25 Ms. Moulder is an excellent attorney, but if you cannot

1  communicate with her or you are so dissatisfied with her
2  representation to where you believe that you're not getting the
3  representation you need, then I would.  I would consider
4  appointing new counsel that could take up the issues that you're
5  wanting to raise.  If new counsel wants to appeal my detention
6  order, I mean, they can appeal it.  It will go to the District
7  Court.  It will be a -- they can consider it or a motion could be
8  filed to reconsider -- asking me to reconsider my previous order.
9  I mean, I can tell you that I know that I give those orders a lot
10 of thought.  I review the Pretrial Services Report, the record of
11 what took place in the detention hearing.  You know, I really
12 don't know what to say in that regard.  You may not be happy with
13 the outcome of the detention order, but you know, I guess I need
14 to get a sense of whether you and Ms. Moulder are able to
15 communicate and, you know, if the relationship is, as I've said,
16 kind of irretrievably broken, and that you can't communicate and
17 you don't have that confidence in what she's telling you, then I
18 would rather appoint you new counsel now, rather than we get down
19 the road further and you get further agitated or upset with her.
20 So, that's what I'm trying to gauge, sir, is just the level of
21 your, I don't want to say confidence, but just your ability to
22 work with her.
23         MR. GOODWIN-BEY:  Well, Your Honor, like I said, I don't
24 have nothing bad to say about Michelle, Ms. Moulder.  You know,
25 she's helped me in the past.  And I've never known her to be

unprofessional, you know what I mean, and that's not my issue is her professionalism. My issue is mainly that, you know, I want to feel that my attorney, you know what I mean, at least is willing to give me the benefit of the doubt, you know. And she's never, you know, I mean, I've talked to her. You know, I have a sense that -- Your Honor, I don't have anything bad to say about my attorney. Okay. But, you know, the questions that I raised for her today, you know, was just a matter of my detention. You know? Like I say, I've been down the road before, and I've seen who's been able to get, you know, been able to work and who's been not able to work. And in my humble opinion, Your Honor, you know, I feel pretty good, and I think the Court could feel pretty safe that I will work and show up to court and not flee. You know, so I would like an attorney who at least feels that, you know, I mean, I deserve that opportunity, Your Honor.

    THE COURT: Well, and this is kind of a, maybe a difficult and awkward situation. I know, and I sense that maybe you're being diplomatic and kind in that I know your attorney is sitting right next to you. And, Ms. Moulder, what's your assessment of the status of your interaction with Mr. Goodwin-Bey? I may be wrong, Mr. Goodwin-Bey, but I know it's kind of hard to maybe say what you really want to way or what you think because Ms. Moulder is sitting here and --

    MR. GOODWIN-BEY: No, I don't have anything bad to say about her, Your Honor. Like I said, she has helped me in the

1  past.  You know what I mean?  I just want to feel that -- I want
2  Michelle to feel that I at least deserve the benefit of the
3  doubt, you know, a chance, you know, Your Honor.  And like I
4  said, she's never shown me any type of unprofessional behavior,
5  you know what I mean?  And I respect her.  And she's good and all
6  that, you know what I mean.  But --
7           MS. MOULDER:  Your Honor, if I may?
8           THE COURT:  Yeah.
9              (Off Record Attorney-Client Discussion)
10          MR. GOODWIN-BEY:  All right, Your Honor, let's stick
11 with Michelle for now.
12          MS. MOULDER:  Okay.  We're good, Your Honor.
13          THE COURT:  All right.  Well, Mr. Goodwin-Bey, I do
14 appreciate what you've shared with the Court, and I want you to
15 know the Court, you know, is sensitive to some of the things that
16 you've expressed to the Court, and I know that Ms. Moulder will
17 keep the Court apprised of any developments in your case.  If
18 there are any other things that need to be brought to the
19 attention of the Court, the Court will obviously provide an
20 opportunity for you to be heard in that regard.  Anything further
21 from the United States?
22          MR. KELLEHER:  No, Your Honor.  Thank you.
23          THE COURT:  All right.  With that, we'll be in recess.
24          MS. MOULDER:  Thank you.
25              (Court Adjourned at 9:57 a.m.)

1
2
3
4
5
6
7
8
9  I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceeding in the
10 above-entitled matter.

11

12          /s/ Lissa C. Whittaker          April 25, 2015
            Signature of transcriber              Date

13
14
15
16
17
18
19
20
21
22
23
24
25