# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>SCOTT GOODWIN-BEY,<br><br>        Defendant. | Case No. 14-3104-01-CR-S-RK |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS

Comes now the United States of America, by and through its undersigned counsel, in opposition to the defendant's motion to suppress the evidence and statements obtained after the defendant's vehicle was stopped on November 29, 2014. The defendant, in support of his motion, asserts that the stop of the defendant's vehicle was improper because the officer "lacked the requisite suspicion" to conduct an investigatory stop. (Goodwin-Bey Brf. 1).

The officer, however, had been advised that an individual, later identified as the defendant, had brandished a firearm in a convenience store and had the weapon taken from his possession by an employee. Additionally, the officer was informed that the defendant had been driving his car back and forth in front of the store, was acting strange, and may be armed with another pistol. Under the circumstances, the officer conducting the stop had adequate cause to believe that the defendant had committed a crime and that he might be in the process of committing another offense. Consequently, the defendant's motion to suppress must be denied.

## Factual Background

On November 30, 2014, at approximately 2:51 p.m., Springfield Police Officers were dispatched to 3905 W. Chestnut Expressway, a Star-Mart convenience store, in reference to a suspicious subject displaying a firearm. Upon arrival, Officer Jennifer Sandage contacted the complaintant, an employee of the convenience store. The employee reported that an individual, he later identified as Scott Goodwin-Bey, had repeatedly entered the store on multiple occasions in the past 24 hours and was acting in a strange and erratic manner. Most recently, the defendant entered the store entered the store and told the employee that he was "looking for my people" and indicated that someone had his girlfriend. During the course of the conversation, the defendant became angry, exited the store, and returned with a handgun. As the defendant brandished the firearm, the employee removed it from the defendant's possession and placed it into a paper bag. The defendant left the premises after being informed that he would not be getting back the firearm. The employees then called the police providing them with a description of the defendant's vehicle and the license plate number.

The call comments, broadcast to responding officers, were as follows:

> **RPT #47050**
>
> **ADVISED CC911 TO HAVE OZARK OFFICER CALL 421 AT 417-459-XXXX**
>
> **PER 421 MALE MAY BE ARMED W/ANOTHER PISTOL**
>
> **VEH STOPPED AT 4000 W CHESTNUT PER 420**
>
> **421 HAS SECURED THE GUN, ADV MALE TOOK IT FROM SUBJ**
>
> **421 HAS THE ITEM SECURE**
>
> **121 MALE WALKED BACK INTO CASEYS**

2

**ANNOUNCED GCS**

**121 AT ORCHARD CREST/CHESTNUT CASEYS**

**VEH IS A TOWNCAR**

**LAST TIME HE DROVE BY WAS 3 MIN AGO**

**LS WB ON CHESTNUT EXPY. HASN'T DRIVEN BACK BY, YET**

**STAYING ON THE PHONE UNTIL PD ARRIVES**

**GUN IS A RUGER**

**HE DECIDED HE WANTS GUN BACK, BUT EMP WOULDN'T GIVE IT BACK. THEY'VE USED GLOVES AND PUT IT IN A BROWN PAPER SACK.**

**DRIVING BACK AND FORTH IN FRONT OF THE STORE. M/B, 50 YOA, TALL, SLENDER, CROPPED HAIR, TAN SHIRT, (?), JEANS.**

**M/B PULLED UP, HAS A GUN, GAVE IT TO AN EMP. SOMETHING IS WRONG WITH HIM. HE ARRIVED IN A WHT 4D LINCOLN, LIC/SL4A5D**

As Officer Sandage was conducted her interview of the store employees, Sergeant John Laub conducted a stop of the defendant's vehicle at 4124 West Chestnut Expressway. Sergeant Laub instructed the defendant to exit the vehicle and walk back to his car. The defendant complied and identified himself as Scott Goodwin-Bey. The defendant denied that he had been in possession of a firearm and claimed he had just been driving around. Sergeant Laub then called Officer Sandage who informed the sergeant that the gun brandished by the defendant had been reported stolen.

Officer Sandage transported the store employee to the defendant's location, where the employee confirmed that the defendant was the same person from whom he had taken the firearm. The defendant was then arrested and transported to the Greene County Jail.

Officer Sandage conducted an inventory search of the vehicle. During the inventory search, the officer observed an empty box of ammunition and several rounds of ammunition scattered about the vehicle. The vehicle was then towed to an impound lot. On January 7, 2015, a warrant to search the vehicle was authorized by the Circuit Court of Greene County in connection with a homicide investigation. The investigators recovered the aforementioned box of ammunition and 18 rounds of 9 millimeter ammunition.

### *Suggestions in Opposition*

The defendant complains that the defendant was illegally detained by members of the Springfield Police Department after brandishing a firearm in a convenience store and that, as result, "all evidence recovered from Defendant and his vehicle, along with any statements made by the Defendant while detained, including the post-detention identification of Defendant… should properly be suppressed." (Goodwin-Bey Brf. 6). As noted above, the defendant did not make any inculpatory statements at the scene of the stop. Moreover, the evidence removed from the defendant's vehicle was seized under color of a valid search warrant[1]. Finally, the defendant does not cite to a single case in which a show-up identification was suppressed predicated upon an illegal investigatory stop[2].

A. *The investigative stop*

It is well-settled that "it is appropriate for police to conduct an investigative stop 'when the victim of a street crime seeks immediate police aid and gives a description of his assailant.'" *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004)(quoting *Adams v. Williams*, 407 U.S.

---

[1] The defendant does not challenge the validity of the warrant.

[2] The Government will address the defendant's substantive claims despite the fact that a majority of the Supreme Court appears to have determined that a defendant's face cannot be suppressed as a fruit of an unlawful arrest. *United States v. Crews*, 445 U.S. 463,479, 100 S.Ct. 1244 (1980)(White concurring). Therefore, the Government maintains that a show-up identification cannot be suppressed a the fruit of an illegal stop.

143, 147, 93 S.Ct. 1921 (1972)). In order to justify such an investigative stop, an officer must possess specific, articulable facts that give rise to a reasonable suspicion that "criminal activity may be afoot." *United States v. Navarette-Barron*, 192 F.3d 786, 790 (8th Cir. 1999). The officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *id*, quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

In this case, Sergeant Laub was aware that a suspect had, just moments before, brandished a firearm in a convenience store in such a manner that prompted an employee to disarm the individual and summon the police. The sergeant was further aware that the subject was acting in a deviant manner, might be armed with another firearm, and had been driving back and forth in front of the store. The sergeant had been provided not only a general description of the car, but also the license plate number. Quite clearly, a rational law enforcement officer could reasonably conclude that the subject had committed any number of violations of state and federal criminal law. See e.g. *United States v. Bell*, 411 F.3d 960, 965 (8th Cir. 2005) (unlawful use of a weapon by exhibition). Further, radio communications indicated that the subject was actively driving back and forth in front of the store and might have another firearm. Under the circumstances, Sergeant Laub was completely justified in conducting a stop of the defendant's vehicle.

B. *Inevitable Discovery*

As a final matter, it should be noted that given the trajectory of this investigation, the evidence that the defendant seeks to suppress would have inevitably been discovered. "Illegally seized evidence may be admitted if the Government proves 'by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by

5

lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.'" *United States v. Glenn*, 152 F.3d 1047, 1049 (8th Cir.1998)(quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir.1997)).

The investigators learned, just moments after the defendant was stopped by Sergeant Laub, that the firearm removed from the defendant's possession was stolen. Further, within weeks of the incident described *supra*, the Springfield Police Department developed the defendant as a suspect in a murder investigation in which four individuals were shot to death with a 9 millimeter firearm. It is evident that the evidence the defendant asks this Court to suppress would have been inevitably recovered.

WHEREFORE, for all the foregoing reasons, the United States respectfully requests that the defendant's motion to suppress be denied.

>
> Respectfully submitted,
> Tammy Dickinson
> United States Attorney
>
> By  */s /James J. Kelleher*
> James J. Kelleher
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on February 2, 2016, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

>*/s/ James J. Kelleher*
>James J. Kelleher
>Assistant United States Attorney