IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-03104-CR-S-RK |
| ) | |
| SCOTT GOODWIN-BEY, ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Scott Goodwin-Bey filed a Motion to Suppress in this case alleging that the stop of Defendant's vehicle was improper because the officer lacked reasonable suspicion to conduct an investigatory stop. (Doc. 42.) As such, Defendant contends that all evidence obtained as a result of the stop, including his statements, must be suppressed. On April 5, 2016, the undersigned held a hearing on this matter. Defendant was present with his attorney Shane P. Cantin. The United States was represented by Assistant United States Attorney James J. Kelleher. During the hearing, the Court heard testimony from Jennifer Sandage, an officer with the Springfield, Missouri Police Department; and Jason Laub, a lieutenant with the Springfield, Missouri Police Department.[1] For the following reasons, the undersigned **RECOMMENDS** that Defendant's Motion be **DENIED**.

**I.    Findings of Fact[2]**

---

[1] At the time of the events discussed herein, Lt. Laub was a sergeant with the Springfield Police Department. As such, he is referred to as Sgt. Laub throughout this Report.

[2] The facts set forth herein are taken from the testimony adduced at the hearings on the instant Motion and the exhibits admitted during the hearings. The hearing transcript appears as Doc. 53 and the parties' exhibit lists appear as Docs. 51 and 52.

On November 30, 2014, the Springfield Police Department dispatch sent out a call after receiving a 911 call from a store clerk at a Star Mart located at 3905 West Chestnut Expressway in Springfield, Missouri. Specifically, the dispatcher indicated that black male with a gun had entered the Star Mart. Dispatch further noted that the man had given the gun to the clerk and that the clerk indicated that "something was wrong" with the man. Additionally, the 911 caller had described the vehicle the man was driving, a white four-door Lincoln, and gave the license plate number.

Officer Sandage and Sgt. Laub were on duty in that area and heard the dispatch call. Officer Sandage recognized the license plate number as one belonging to a convicted felon who was also a suspect in a homicide investigation, a man named Scott Goodwin-Bey. She responded to the Star Mart at 3902 Chestnut Expressway, arriving approximately three minutes after receiving the dispatch call. When she entered the Star Mart, the store clerk indicated that a black male had been in the store a number of times that day and had been behaving erratically. Additionally, the clerk indicated that the man had a gun during his most recent visit to the store, which the clerk took from him. He further noted the direction the man's white four-door Lincoln had gone when exiting the store lot. Officer Sandage relayed this information to other law enforcement officers via radio, specifically to Sgt. Laub. Officer Sandage also obtained the firearm from the store clerk and ran the serial number. The results, which took approximately three to four minutes to generate, revealed that the firearm had been reported stolen. Officer Sandage radioed this information to other law enforcement, including Sgt. Laub. The store clerk then agreed to accompany Officer Sandage to identify the man from the store.

While Officer Sandage responded the Star Mart on Chestnut Expressway, another police officer radioed that he saw a vehicle matching the description given by the clerk parked at a gas

2

station on the 4100 block of Chestnut Expressway. Sgt. Laub responded to that location. When he arrived at the gas station, Sgt. Laub observed the white four-door Lincoln. He observed that the plates matched those provided by the 911 caller and noticed that it was occupied by a black male. However, unlike Officer Sandage, Sgt. Laub was not aware at this time that the vehicle belonged to a convicted felon or a suspect in a homicide investigation. But, Sgt. Laub was aware of the 911 call indicating that the suspect was acting strangely or that something was not right with him. Further, he was aware that the suspect had a firearm taken from him by the Star Mart clerk. When Sgt. Laub arrived at the gas station, the Lincoln was moving to exit the lot. Sgt. Laub turned his car around and began following the car as it turned onto Chestnut Expressway. When the Lincoln came to a stop at a stop sign, Sgt. Laub activated his lights. At that point, he believed he had reasonable suspicion that the person in the vehicle had been involved with criminal activity, specifically the disturbance at the Star Mart. The Lincoln stopped and the occupant stepped out of the vehicle on his own volition. Sgt. Laub conducted a frisk for officer safety, and was able to identify the individual as Defendant Scott Goodwin-Bey. Defendant did not have any weapons on his person. Sgt. Laub began talking to Defendant, who stated that he was not in possession of a firearm. Shortly thereafter, Defendant indicated that he did not wish to talk to Sgt. Laub anymore. Sgt. Laub noted that Defendant was cooperative and followed his instructions throughout their interaction. After stopping the car and detaining Defendant, Sgt. Laub learned that gun left at the Star Mart was stolen.

Sgt. Laub testified that Officer Sandage arrived on scene with the store clerk less than five minutes after the stop was initiated. At that time, Defendant was sitting on the curb and was not handcuffed. The store clerk identified Defendant as the man who had been in the Star Mart with the gun. Officer Sandage asked the clerk if he was sure of his identification, and he said he

was. Prior to this identification, the store clerk received show-up identification instructions, which he signed. After the clerk made the identification, Officer Sandage drove the clerk back to the store. Sgt. Laub then arrested Defendant for a weapons violation. Defendant was detained approximately 30 minutes before being arrested.

Because there was nowhere to park Defendant's vehicle after his arrest, officers decided to have the vehicle towed. Prior to the vehicle being towed, Officer Sandage conducted an inventory search of the vehicle. During the course of that search, Officer Sandage observed bullets, shell casings, and projectiles in the floor of the front passenger compartment. Knowing that Defendant was a convicted felon and a person of interest in a homicide investigation, she contacted her superiors about this ammunition. The Lincoln was subsequently towed to an impound lot and sealed. Law enforcement later obtained a warrant to search the vehicle authorized by the Circuit Court of Greene County in connection with a homicide investigation. During the search pursuant to the warrant, law enforcement recovered the ammunition and seized it as evidence.

**II.     Conclusions of Law**

Defendant contends that officers did not have sufficient reasonable suspicion to conduct an investigatory stop of his vehicle and detain him. As a result of this illegal detention, Defendant contends any statements by him, the subsequent identification by the store clerk, and the search of his vehicle and evidence seized therefrom must also be suppressed. The Court takes up these arguments below.

"When a law enforcement officer directs a motor vehicle to stop by the side of the road and detains its occupants for questioning, such an investigatory stop constitutes a search and seizure under the Fourth and Fourteenth Amendments, 'even though the purpose of the stop is

4

limited and the resulting detention quite brief.'" *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001) (internal quotation omitted). However, such a brief investigatory stop of an individual is permissible under the Constitution, "if the officer reasonably suspects that the individual is involved in criminal activity." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013); *see also Terry v. Ohio*, 392 U.S. 1 (1968). The Fourth Amendment also "permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007) (citation omitted). "[R]easonable suspicion is a less demanding standard than the probable cause required for an arrest," [and] it 'can arise from information that is less reliable than that required to show probable cause,'" including an anonymous tip that bears sufficient indicia of reliability. *Wheat*, 278 F.3d at 726 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). In determining whether law enforcement had reasonable suspicion to conduct an investigatory stop, courts examine the totality of the circumstances. *Bell*, 480 F.3d at 863. "If the investigatory stop is not justified by reasonable suspicion . . . any evidence derived from the stop is inadmissible at trial." *Wheat*, 278 F.3d at 726.

In this case, Sgt. Laub had sufficient reasonable suspicion to stop and detain Defendant. Sgt. Laub had information via the store clerk's 911 call that a black male driving a white four-door Lincoln had recently been in the Star Mart with a firearm. The store clerk also provided officers with the license plate for this vehicle. By giving such specific information, the 911 call had sufficient indicia of reliability. *United States v. Wheat*, No. CR 96-3009-MWB, 1996 WL 33425393, at *3 (N.D. Iowa Sept. 16, 1996), *subsequently aff'd*, 278 F.3d 722 (8th Cir. 2001) (a 911 call with sufficient indicia of reliability may provide the basis for reasonable suspicion). Moreover, officers were able to independently corroborate the information from the clerk's 911

5

call when Officer Sandage arrived at the Star Mart and obtained the firearm from the store clerk. Additionally, officers, including Sgt. Laub, saw a black male driving a vehicle matching the description and bearing the plate number provided by the 911 caller not far from the Star Mart. Based on this information, the dispatch reporting that the man in the Star Mart was behaving strangely, Officer Sandage's radio announcement that the Star Mart clerk had taken a firearm from the man, Sgt. Laub had sufficient reasonable suspicion that the black male driving the white Lincoln was involved in criminal activity. *See United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("it is appropriate for police to conduct an investigative stop 'when the victim of a street crime seeks immediate police aid and gives a description of his assailant.'") (quotation omitted); *see also United States v. Bell*, 411 F.3d 960, 965 (8th Cir. 2005) (under Missouri law, exhibition of a weapon readily capable of lethal use in an objectively angry or threatening manner is a crime). Further, the regular radio communications indicated that the man in the car was actively traveling near the Star Mart. As such, Sgt. Laub had reasonable suspicion to stop the vehicle and detain Defendant. Because Sgt. Laub had the requisite reasonable suspicion to conduct an investigatory stop and detention, any statements by Defendant, the clerk's identification of him, and the subsequent search of his vehicle need not be suppressed. *See Fisher*, 364 F.3d at 974 (when a defendant is justifiably detained, his statements and evidence derived therefrom are not the fruits of a constitutional violation).

Though Defendant does not challenge the length of his detention, the Court addresses it nonetheless as part of the investigatory stop and detention analysis. As noted, less than five minutes passed between the time that Defendant was stopped and the Star Mart clerk arrived with Officer Sandage to make an identification. In total, the evidence shows that Defendant was detained less than 30 minute prior to his arrest. As such, the Court concludes that the length of

his detention was reasonably related to the legitimate goal of responding to the circumstances and information the officers had and therefore constitutional. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *see also United States v. Lyons*, 486 F.3d 367, 372 (8th Cir. 2007) (31-minute delay between issuance of a ticket and arrival of drug dog not unreasonable); *United States v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994) (one-hour time period between when the officer stopped the defendant and when the officer arrested defendant was reasonable because the officer acted diligently to minimize detention period). Defendant does not challenge the validity of the inventory search of his vehicle or subsequent search warrant, and so the Court need not address those matters. As such, the Court finds Defendant did not suffer a constitutional violation and thus his Motion should be denied.

### III. Recommendation

Based on the foregoing discussion, the undersigned hereby **RECOMMENDS** that Defendant's Motion to Suppress, (Doc. 42), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: May 26, 2016