IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 14-3104-CR-S-RK |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SCOTT GOODWIN-BEY, | ) | |
|     Defendant. | | |

**DEFENDANT'S OBJECTIONS TO THE REPORT OF THE U.S. MAGISTRATE JUDGE RECOMMENDING DENIAL OF THE DEFENANT'S MOTION TO SUPPRESS**

COMES NOW, Defendant, Scott Goodwin-Bey, by and through his undersigned counsel, and pursuant to Title 28 U.S.C. §636(b)(1)(C), hereby sets forth the following objections to the Report and Recommendation of the U.S. Magistrate Judge (Doc. 54) recommending denial of the Defendant's motion to suppress (Doc. 42).

The issue in this case is simply whether or not Sergeant Laub, on November 30, 2014, at the moment he turned on his emergency lights to stop and detain Defendant, had legally sufficient reasonable suspicion to do so. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that the Fourth Amendment is not offended by a brief investigatory stop by a law enforcement officer who has a reasonable suspicion, based upon specific and articulable facts, that the person stopped *is involved in criminal activity* (emphasis added). Based upon the evidence and testimony adduced at the hearing, Sergeant Laub did not have specific and articulable facts to support the reasonable

suspicion that Defendant was, or was about to be, involved in criminal activity. As such, the findings of the U.S. Magistrate Judge should be reversed, and the Defendant's motion to suppress herein should be sustained.

In his findings, the U.S. Magistrate Judge makes specific reference to those facts which he concludes justify the investigatory stop and detention by Sergeant Laub. The U.S. Magistrate Judge emphasizes these facts throughout the Report and Recommendation and, specifically on pages 3, 5 and 6 of the Report, states clearly that Sergeant Laub had legally sufficient reasonable suspicion of criminal activity because:

1. The store clerk from Star Mart called 911,
2. The clerk identified a "black male driving a white four door Lincoln,"
2. The black male had been at the Star Mart "with a firearm,"
3. The black male was reported to have been "behaving strangely,"
4. The clerk had taken the handgun from the black male,
5. The clerk had provided the vehicle description and the license plate number.

No other information was known to Sergeant Laub at the moment he initiated his stop and detention of Defendant. Based solely and exclusively upon these factual findings, the U.S. Magistrate Judge concludes that Sergeant Laub "had reasonable suspicion that the person in the vehicle had been involved with criminal activity, specifically the disturbance at the Star Mart." (Report, page 3).

There was absolutely no evidence or testimony presented at the hearing of any "disturbance" at the Star Mart. The 911 caller did not identify one single, specific, articulable fact upon which Sergeant Laub could base any reasonable suspicion that a crime had been committed. That a black man driving a white Lincoln had been at the Star Mart "acting

strangely" and from whom the clerk had taken a handgun, are not facts upon which it is reasonable to conclude that any crime was committed. The 911 caller was not described as upset or scared, and there was no allegation that the black male had made any threats, or had behaved in an angry, threatening, or violent manner. In fact, the U.S. Magistrate Judge inquired directly of Sergeant Laub during the hearing as to the issue of what criminal activity he (Sergeant Laub) may have been suspicious about:

> EXAMINATION BY THE COURT (Transcript, page 38, line 9):
>
> Q. And again, just one follow-up question, Lieutenant. I believe that the prosecutor asked a question to the effect of that you believed that perhaps some firearms violations had occurred. I forget the way the question was phrased, but what, if any, firearms violation did you -- I think you had indicated that it was a stop, maybe, for a peace disturbance or you were investigating the peace disturbance. And then the question from the attorney for the Government was about a firearms violation. Can you further elaborate?
>
> A. Yes, sir. What I was getting at, whenever the dispatch -- my report, the documents, the comments that was provided to me over the radio by dispatch, and typically those comments are just little snippets. Whenever I had someone call 911, they said that there's a weapon involved. If it's given, taken, the individual is not acting -- is acting strangely, **I was assuming** -- I had a whole range of violations that this **could be** based on the information. **I thought it could be** as simple as a peace disturbance or **it could range** all the way up to maybe an unlawful use of a weapon just because **I don't know** if 100 percent of the information that happened on the scene was relayed to dispatch which then was relayed to me. So, **it was an assumption** on my part.
>
> Q. What unlawful use of a weapon offense did you have or –
>
> A. **I didn't know if** the weapon may have been pointed and a threat was made, **which I guess** would be an assault probably more than unlawful use of a weapon. Perhaps I should rephrase that and say it ranged from maybe a simple peace disturbance to up to a first-degree assault. And **I was incorrect in thinking** unlawful use of a weapon.

Q. Okay. I just was curious. There never was a follow-up question. The question was, you know, did you believe there might have been some firearms violations that may have been committed. I wanted to –

A. Yeah. I –

Q. You had –

A. **That was complete speculation**. I know I assumed that I -- the minimum that I had was at least some kind of peace disturbance based on a 911 call actually being -- someone feeling the need to call the police. And then Officer Sandage saying prior to me getting to Casey's that the weapon had been taken from the suspect. So, **I thought if** a weapon had to be taken, it wasn't -- they didn't meet there from like a Craigslist, somebody wants to show a weapon, sell it there or nothing. **It didn't seem** like a casual meeting, so **that's why I felt** I had at least a peace disturbance of some sort.

Q. Okay. I just was curious.

(emphasis added)

Without sufficient legal justification, the stop and detention of an individual is a violation of that person's Fourth Amendment protections. *Terry*, and the entire line of cases that follow require reasonable suspicion of a *crime*, and that the reasonable suspicion be based upon specific, articulable facts. *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013); see also *Terry v. Ohio*, 392 U.S. 1 (1968). (see Report, page 5) When pressed about the crime or criminal activity that formed the basis for this *Terry* stop, Sergeant Laub could not be more unclear about what he believed, or why he believed it, based upon the information that he was provided by the 911 dispatch. At first he thought the report raised some kind of weapons violation, but he later retracted that opinion, and testified that it was probably more of a peace disturbance issue. Either way, he very clearly admitted that he was unclear as to the basis of his investigation at that point, and that his testimony was "complete speculation." This is not the kind of specific, articulable

facts upon which a *Terry* stop can rest. See *U.S. v. Gilliam*, 520 F.3d 844, 846 (8th Cir. 2008) ("Reasonable suspicion does not exist solely on the basis of an officer's hunch. *Walker,* 494 F.3d at 691.").

While it is somewhat of a collateral issue, the U.S. Magistrate Judge went on to evaluate and conclude that the length of the investigatory detention was not otherwise unreasonable. To the extent that this issue is relevant to the determination of the main issue above, the U.S. Magistrate Judge also erred in his factual findings to support this conclusion.

As a last point, the U.S. Magistrate Judge points out that the Defendant "does not challenge the validity of the inventory search of his vehicle or the subsequent search warrant," and so those matters are not addressed in the Report. The search warrant to which the U.S. Magistrate Judge is referring was issued by a Missouri Circuit Court Judge in the parallel state investigation that would become the state murder charges (now still pending trial) against the Defendant for his role in the murder of several individuals. While it is true that this motion to suppress does not directly attack the procedural or probable cause basis for that state court warrant, or the admissibility of evidence in that state case, all evidence obtained from the inventory and later search should be suppressed in this case. The unreasonable and unlawful detention of Defendant by Sergeant Laub was a direct violation of Defendant's Fourth Amendment protections. The unlawful detention of the Defendant resulted in his identification by the store clerk, formed the basis for his arrest at that time, which provided law enforcement with the need to conduct an inventory search of the Defendant's vehicle, and ultimately formed a significant part of the basis for the state court search warrant. Therefore all of the evidence derived directly from this unlawful stop and detention, and which the government intends to use in this case, should properly be suppressed, and the findings of the U.S. Magistrate Judge

overruled.

WHEREFORE, counsel requests that the Court grant the relief requested herein and for such other relief as deemed appropriate.

Sincerely,

*/s/Shane P. Cantin* (#41699)

CARVER, CANTIN & MYNARICH, LLC
COUNSEL FOR SCOTT GOODWIN-BEY
901 E. St. Louis, Suite 1600
Springfield, Missouri 65806
417-831-6363
shane@c2glaw.com

## CERTIFICATE OF SERVICE

On this 8th day of June, 2016, a copy of the foregoing motion was filed on the Court's ECF electronic filing system with copies to all counsel.

*/s/ Shane P. Cantin*